The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
November 15, 2018

## 2018COA158

**No. 16CA0444, People v. Ray — Criminal Law — Sentencing — Restitution — Assessment of Restitution**

A division of the court of appeals considers whether the plain language of the restitution statute in effect at the time of the trial court's order in this case, section 18-1.3-603(4)(b)(I), C.R.S. 2012, prohibits the Colorado Judicial Department from charging criminal defendants 1% interest per month on their restitution obligations because the statute provides that a defendant owes post-judgment interest "from the date of the entry of the order at the rate of twelve percent *per annum*."  (Emphasis added.)

The division determines that the statute is ambiguous, but nevertheless concludes that the Judicial Department did not violate the statute.

COLORADO COURT OF APPEALS                                   **2018COA158**

Court of Appeals No. 16CA0444
El Paso County District Court No. 09CR254
Honorable Robert L. Lowrey, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Matthew James Ray,

Defendant-Appellant.

ORDER AFFIRMED

Division IV
Opinion by JUDGE BERNARD
Hawthorne and Tow, JJ., concur

Announced November 15, 2018

Cynthia H. Coffman, Attorney General, Majid Yazdi, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Tracy C. Renner, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     When a statute says that a defendant owes interest at a rate of 12% per annum on his restitution obligation, does that mean that the Colorado Judicial Department can only require him to make one interest payment per year?  Defendant, Matthew James Ray, thinks so.  We do not.

¶ 2     Our story begins with a letter sent by the Judicial Department in July 2015.  It said that the Judicial Department would begin charging defendant interest at "1% per month" on any outstanding restitution balance.  He responded by asking the trial court for an order declaring that the Judicial Department did not have the statutory authority to charge him monthly interest.  The trial court declined.

¶ 3     Defendant appealed.  We affirm.

## I.     Background

¶ 4     A jury convicted defendant of second degree assault.  The trial court sentenced him to prison, and it ordered him to pay $19,855.91 in restitution.

¶ 5     When the court issued the restitution order, section 18-1.3-603(4)(b)(I), C.R.S. 2012, which we shall call "the restitution statute," provided that a defendant owed post-judgment interest

"from the date of the entry of the order at the rate of twelve percent per annum." (In 2016, the legislature amended the statute to lower the rate to 8%. Ch. 277, sec. 1, § 18-1.3-603, 2016 Colo. Sess. Laws 1142.) The restitution order in this case specifically noted that "interest will accrue at 12% per annum from the date of entry of the order."

¶ 6 In June 2015, the Judicial Department issued a press release "announc[ing] a finalized plan to correct deficiencies in calculating and assessing interest on restitution." The press release noted that the restitution statute "ha[d] not been applied consistently among the state's judicial districts" and that the Judicial Department would begin "calculat[ing] and assess[ing] 1 percent interest monthly on restitution balances to ensure consistent and accurate application of the law across the state."

¶ 7 The new policy came on the heels of a 2014 report issued by the Colorado State Auditor. The report noted that most judicial districts had not assessed or collected any interest since the legislature had enacted the restitution statute.

¶ 8 In July 2015, clerks of court around the state began sending letters to defendants with outstanding restitution balances to

inform them of the new policy. Defendant received a letter from the clerk of the El Paso County district court, which stated that he had an outstanding restitution balance of $19,583.98 and that "interest will be added at 1% per month of the current balance . . . until the original restitution amount is paid in full."

## II.  Trial Court's Order

¶ 9   In response to the Judicial Department's new policy, defendant asked the trial court for an order declaring that the Judicial Department did not have the statutory authority to charge him monthly interest. He made two arguments in support of his request: (1) the statute's plain language did not allow the Judicial Department to make interest payable monthly; and (2) charging interest monthly rather than yearly "results in increased interest payments and [therefore] greater punishment."

¶ 10   The trial court denied the motion. It first concluded that "twelve percent per annum" plainly referred "to a simple interest calculation that is compounded at the end of each calendar year." But, the court continued, "[t]hat does not mean . . . that the assessment of interest remains stagnant for the year prior to interest being compounded." The trial court found that "[a]

contrary interpretation would run afoul of the legislative directive that interest begin accruing immediately upon entry of the restitution order."

¶ 11    The court then engaged in an interest-calculating exercise, stating that it would "appl[y] the concept of simple interest as it is normally understood in everyday financial circumstances." According to the court, to determine an interest payment, one must first divide the annual interest rate (12%) by 365 (the number of days in a year) to calculate the "per diem percentage," which, in this case was ".0329%." But the court found that "[i]n an apparent effort to make calculations more uniform yet accurate, the [judicial department] has chosen to assess interest at the rate of 1% per month instead of the arguably more accurate .0329% per day."

¶ 12    (In a thirty-day month, .0329% per day would yield a monthly interest rate of .987%. In a thirty-one-day month, it would yield a monthly interest rate of 1.0199%. In short February, it would yield a monthly interest rate of .9212%. So, in a non-leap year, the total amount of interest using the trial court's methodology would be 12.0085%. But, the trial court initially rounded the daily percentage rate to four decimal places. If the precise daily rate is

4

used, which has sixteen decimal places, the total amount of interest will be exactly 12%.)

¶ 13     So, considering that "[t]he legislature has given no guidance to the interpretation of 'twelve percent per annum,'" the trial court concluded that it could not "find fault with the [Judicial Department's] method of assessing post judgment interest."

### III.   Discussion

#### A.    Standard of Review and Principles of Statutory Interpretation

¶ 14     This appeal requires us to interpret the restitution statute. Our review is de novo. *People v. Ortiz,* 2016 COA 58, ¶ 15.

¶ 15     When we interpret statutes, we must ascertain and give effect to the legislature's intent. *Colo. Dep't of Revenue v. Creager Mercantile Co.,* 2017 CO 41M, ¶ 16.  In doing so, "[w]e give effect to words and phrases according to their plain and ordinary meaning." *Denver Post Corp. v. Ritter,* 255 P.3d 1083, 1089 (Colo. 2011).  And, "we will not interpret a statute to mean that which it does not express." *Carruthers v. Carrier Access Corp.,* 251 P.3d 1199, 1204 (Colo. App. 2010).

¶ 16     If a statute's language is clear, we apply it as the legislature wrote it. *Denver Post Corp.,* 255 P.3d at 1089.  But, "[i]f the

statutory language is ambiguous, we may use other tools of statutory interpretation to determine the General Assembly's intent." *Id.* "A statute may be ambiguous if it is silent on an issue that would be expected to be within its scope." *People v. Carey*, 198 P.3d 1223, 1229 (Colo. App. 2008).

## B.  The Restitution Statute

¶ 17     The restitution statute requires a court to consider restitution when it enters an order of conviction.  § 18-1.3-603(1), C.R.S. 2018.

¶ 18     Timely payment of restitution lessens the financial burden of crime on victims, compensates them for "suffering and hardship," and preserves their "individual dignity."  § 18-1.3-601(1)(e), C.R.S. 2018; *see also People v. Cardenas*, 262 P.3d 913, 914 (Colo. App. 2011).  As a result, defendants must pay their restitution obligations in the "most expeditious manner."  § 18-1.3-601(1)(g)(I); *Roberts v. People*, 130 P.3d 1005, 1010 (Colo. 2006).

¶ 19     To "encourage expeditious payment," the legislature required defendants to pay post-judgment interest.  § 18-1.3-603(4)(b)(I); *Roberts*, 130 P.3d at 1010.  When the court ordered restitution in this case, the statute provided, as we observed above, that "defendant owe[d] interest from the date of the entry of the order at

6

the rate of twelve percent per annum." § 18-1.3-603(4)(b)(I), C.R.S. 2012.

## C. Discussion

¶ 20 Defendant first contends that the restitution statute is unambiguous. According to defendant, by using the phrase "per annum" in the restitution statute, the legislature demonstrated its clear intent that interest could be collected only one time per year.

¶ 21 In the alternative, if we conclude that the statute is ambiguous, defendant then asks us to reject the Judicial Department's interpretation because (1) monthly payments of interest do not encourage indigent or incarcerated defendants to pay their restitution expeditiously; (2) there are other methods in the statute to encourage expeditious payment; and (3) the rule of lenity should apply in defendant's favor.

### 1. Is the Statute Ambiguous?

¶ 22 Defendant contends that the statute is unambiguous based on the plain and ordinary meaning of "per annum." We disagree.

¶ 23 The legislature did not define "per annum" in the restitution statute. So the principles of statutory construction allow us to refer to a dictionary definition to ascertain the meaning of an undefined

term or phrase.  *Bachelor Gulch Operating Co. v. Bd. of Cty. Comm'rs*, 2013 COA 46, ¶ 25.  But the dictionary definition of "per annum" tells us only that the phrase means "[b]y, for, or in each year; annually."  Black's Law Dictionary 1317 (10th ed. 2014).  Applying the definition, we know that a defendant owes twelve percent annually, but remain in the dark about how often the Judicial Department can require a defendant to make interest payments.

¶ 24　We conclude that the statute is ambiguous because it is silent about this question of timing, *Carey*, 198 P.3d at 1229, and the statute is therefore susceptible of more than one reading, *State v. Nieto*, 993 P.2d 493, 500-01 (Colo. 2000).

### 2.　Other Methods of Ascertaining the Legislature's Intent

¶ 25　If a statute is ambiguous, we must consider other factors to ascertain the legislature's intent.  *See* § 2-4-203, C.R.S. 2018.

¶ 26　For example, we may look to a statute's legislative history.  *See McLaughlin v. Oxley*, 2012 COA 114, ¶ 10.  In this case, we have reviewed the legislative history of House Bill 00-1169, which enacted the restitution statute.  We have also reviewed the legislative history of Senate Bill 16-065, which amended the specific

subsection in question after the Judicial Department announced its new policy. But we did not discover any indication that the legislature contemplated the issue of when interest payments would be due.

¶ 27    We nevertheless conclude that the Judicial Department did not violate the statute for the following reasons.

¶ 28    First, although we have not located any Colorado case law on point, other jurisdictions have interpreted similar language in contracts and in statutes. The consensus is that "[t]he term 'per annum' is intended only as a measure of the rate with respect to time and does not require the payment of interest annually." *Gustin v. Sun Life Assurance Co. of Canada*, 152 F.2d 447, 449 (6th Cir. 1945); *see Canton Trust Co. v. Durret*, 9 S.W.2d 925, 927 (Mo. 1928).

¶ 29    Second, we believe that, if the legislature intended to limit interest payments to an annual basis, it would have clearly done so. *Spahmer v. Gullette*, 113 P.3d 158, 162 (Colo. 2005)("We will not create an addition to a statute that the plain language does not suggest or demand."). Indeed, the legislature has done just that in other contexts. *See* § 32-11-644(2), C.R.S. 2018 (interest is

9

"payable annually or semiannually at a rate not exceeding eight percent per annum"); § 36-5-106, C.R.S. 2018 ("The interest shall be due and payable annually.").

¶ 30     Third, the Judicial Department's assessment of monthly interest payments is consistent with the common practice in the financial community.  There are typically three methods to collect interest payments: (1) the 365/365 method or the "exact day" method; (2) the 360/360 method or the "ordinary interest" method; and (3) the 365/360 method or the "bank interest" method.  *Kreisler & Kreisler, LLC v. Nat'l City Bank*, 657 F.3d 729, 732 (8th Cir. 2011).

¶ 31     Under the exact day method, the annual interest rate is divided by 365 to calculate a daily interest rate.  *See Am. Timber & Trading Co. v. First Nat'l Bank of Or.*, 511 F.2d 980, 982 n.1 (9th Cir. 1973).  Then, the daily interest rate is multiplied by the principal amount for each day a debt is outstanding during a month.  *Id.*  At the month's end, a debtor is assessed monthly interest based on the number of days in a month.  *Id.*

¶ 32     (We note that the trial court described this method, but then found that the interest "compounded at the end of each calendar

10

year."  "Simple interest" is "[i]nterest paid on the principal only," while "compound interest" is "[i]nterest paid on both the principal and the previously accumulated interest."  Black's Law Dictionary 935-36.  The parties do not raise the issue of whether the interest is simple or compound, but we assume for the purpose of discussion that the interest authorized by the restitution statute is simple interest because that is the standard presumption, *see Quinlan v. Koch Oil Co.*, 25 F.3d 936, 941 (10th Cir. 1994), because the legislature has been explicit when imposing compound interest in other statutes, *see* § 5-12-102(1)(b), C.R.S. 2018 ("Interest shall be at the rate of eight percent per annum compounded annually . . . ."), and because the legislature later amended the statute to clarify that it is simple interest, 2016 Colo. Sess. Laws at 1142.)

¶ 33    Next, under the ordinary interest method, the annual interest rate is divided by 360 to calculate a daily interest rate.  *Am. Timber & Trading Co.*, 511 F.2d at 982 n.1.  This method assumes that each month has thirty days regardless of how many days are in the month.  *Id.*  Under this method, assuming the principal amount

11

does not change, the interest payment will be the same every month. *Id.*

¶ 34 There is a third method for calculating interest payments known as the bank interest method. *Kreisler & Kreisler*, 657 F.3d at 732. Under this method, the annual interest rate is divided by 360 to calculate a daily interest rate, but then multiplied by the actual number of days in a year, usually 365. *Id.* "Because the numerator and denominator do not match as they do in the other methods, the [bank interest method] increases the effective interest rate . . . ." *Id.*

¶ 35 So, applying either the exact day method or the ordinary interest method in this case, the Judicial Department would collect no more than twelve percent interest per year. Only under the third method, which is not at issue in this case, would interest exceed twelve percent annually. *See Am. Timber & Trading Co.*, 511 F.2d at 982 (noting that using the bank interest method resulted in an actual annual interest rate of 12.167%, even though Oregon statute limited the annual interest rate to 12%.)

¶ 36 Fourth, defendant's interpretation would run afoul of another part of the restitution statute that provides that a defendant owes

12

interest "from the date of the order." *See People v. Benavidez*, 222 P.3d 391, 393 (Colo. App. 2009)(interpreting a statute to give "sensible effect to all its parts"). Under defendant's interpretation, a person could avoid paying any interest from "the date of the order" for nearly a year if he were able to pay off the restitution before year's end. (The record is unclear as to whether the Judicial Department's current method would also allow a defendant to avoid paying any interest if he could pay all of the ordered restitution in full before the first month's end.)

¶ 37     Fifth, we disagree with defendant's contention that monthly payments do not promote the legislature's stated objective of encouraging expeditious payment of restitution. *Roberts*, 130 P.3d at 1010. As stated above, under defendant's interpretation, there would be little incentive to make any payments on restitution until the year's end, *see People v. Garcia*, 55 P.3d 243, 245 (Colo. 2002)(noting that "if restitution is not paid immediately, then victims are entitled to compensation for the delay in return of their money"), which is contrary to the legislature's intent. We also disagree with defendant's contention that, to the extent that monthly interest encourages those with means to pay, it does not

13

encourage indigent or incarcerated defendants to do the same. A

defendant's ability to pay restitution, and by implication, interest, is

irrelevant to this issue. *See People v. Stovall*, 75 P.3d 1165, 1167

(Colo. App. 2003).

¶ 38    Sixth, we are not persuaded to adopt defendant's

interpretation of the statute based on "other mechanisms in the

statute that are designed to accomplish" the goal of expeditious

payment. Our supreme court has determined that the assessment

of post-judgment interest encourages expeditious payment.

*Roberts*, 130 P.3d at 1010. The fact that there are also other

statutory provisions designed to promote the same goal is

irrelevant.

¶ 39    Seventh, the Judicial Department issues statements that are

"promulgated pursuant to this court's general power to administer

the Colorado judicial system." *Bye v. Dist. Court*, 701 P.2d 56, 59

(Colo. 1985)(discussing Chief Justice Directives). And, although an

exercise of administrative authority "may not modify or contravene

an existing statute," *Colo. Consumer Health Initiative v. Colo. Bd. of

Health*, 240 P.3d 525, 528 (Colo. App. 2010), we have concluded

above that the Judicial Department's procedure did not "modify or

contravene" the restitution statute. Instead, "the judicial branch of government possesses the inherent power to determine and compel payment of those sums of money which are reasonable and necessary to carry out its mandated responsibilities." *Pena v. Dist. Court*, 681 P.2d 953, 956 (Colo. 1984).

¶ 40 Finally, based on the preceding analysis, we do not need to invoke the rule of lenity. *See Frazier v. People*, 90 P.3d 807, 811 (Colo. 2004)("[A]pplication of the rule of lenity is a last resort and will not be applied when we are able to discern the intent of the [legislature].").

¶ 41 The order is affirmed.

JUDGE HAWTHORNE and JUDGE TOW concur.