The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 9, 2019

## 2019COA67

**No. 16CA1834, *Peo in Interest of A.N.* — Juvenile Court — Delinquency; Criminal Law — Sentencing — Restitution — Assessment of Restitution**

A division of the court appeals considers whether the trial court erred when it overruled a juvenile defendant's objection to the Judicial Department's method of calculating and assessing monthly interest on his unpaid restitution balance and denied the juvenile defendant's motion for an order specifying that interest will be assessed on a yearly basis.  Relying on the reasoning in *People v. Ray*, 2018 COA 158, the division concludes that section 18-1.3-603(4)(b)(I), C.R.S. 2013, permits the Judicial Department to compute and assess interest at a rate of 1% per month.  The division further rejects the juvenile defendant's contention that because the statute is ambiguous as to the frequency with which

interest may be assessed, it is void for vagueness under the United States and Colorado Constitutions. Accordingly, the division affirms the trial court's order.

COLORADO COURT OF APPEALS     **2019COA67**

Court of Appeals No. 16CA1834
City and County of Denver Juvenile Court No. 14JD59
Honorable D. Brett Woods, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of A.N.,

Juvenile-Appellant.

ORDER AFFIRMED

Division VI
Opinion by JUDGE RICHMAN
Navarro and Welling, JJ., concur

Announced May 9, 2019

Philip J. Weiser, Attorney General, Jacob R. Lofgren, Assistant Attorney
General, Denver, Colorado, for Petitioner-Appellee

Megan A. Ring, Colorado State Public Defender, Ryann S. Hardman, Deputy
State Public Defender, Denver, Colorado, for Juvenile-Appellant

¶ 1     Appellant, A.N., appeals the trial court's order overruling his objection to the Judicial Department's method of calculating and assessing monthly interest on his unpaid restitution balance and denying his motion for an order specifying that interest will be assessed on a yearly basis.  We affirm the trial court's order.

## I.     Background

¶ 2     A.N. is a juvenile who stole an unoccupied car that had been left running.  Police found and pursued A.N., and a high-speed chase ensued.  The chase ended when A.N. crashed the car in an open field and was apprehended by police.  A.N. was charged with several offenses and elected to plead guilty to second degree aggravated motor vehicle theft.  As part of his plea, he agreed to pay restitution to the victims.  Although the parties stipulated to some of the restitution expenses, A.N. disputed the full amount of restitution sought.  That dispute was ultimately resolved by this court in *People in Interest of A.N.*, (Colo. App. No. 15CA0014, Feb. 16, 2017) (not published pursuant to C.A.R. 35(e)) (*A.N. I*), wherein a division of this court affirmed the award of $9677.44 in restitution to the victims.

1

¶ 3    While *A.N. I* was pending, the Judicial Department announced that to remedy prior inconsistencies in its method of calculating and assessing interest on restitution obligations, it would begin calculating and assessing 1% interest on all restitution obligations on a monthly basis.  A.N. received a letter notifying him that, beginning in September of that year, interest would be added to his restitution balance at a rate of 1% per month.  A.N. filed a motion objecting to this notification in the trial court, additionally requesting an order that his interest be calculated and assessed at the end of each year and not on a monthly basis.  In a thorough, written order, the trial court overruled A.N.'s objection and denied A.N.'s motion for an order contrary to the Judicial Department's decision.[1]

---

[1] In their answer brief, the People correctly note that when the trial court issued its initial order, the trial court lacked jurisdiction because an appeal regarding the amount of restitution was pending in this court.  *See People in Interest of A.N.*, (Colo. App. No. 15CA0014, Feb. 16, 2017) (not published pursuant to C.A.R. 35(e))(*A.N. I*); *see also Molitor v. Anderson*, 795 P.2d 266, 269 (Colo. 1990) (noting that "in this jurisdiction a trial court may not determine matters affecting the substance of a judgment once an appeal of that judgment has been perfected unless the appellate court issues an order remanding the judgment to the trial court for that purpose").  Accordingly, before reaching any conclusion on the

¶ 4     A.N. makes four contentions on appeal.  First, he contends that the trial court erred in concluding that the Judicial Department's method of calculating and assessing interest comports with the plain language of the statute in effect at the time that restitution was ordered.  § 18-1.3-603(4)(b)(I), C.R.S. 2013 (hereinafter, the restitution interest statute).  Second, he contends that if this court concludes that monthly interest assessments are proper, then the restitution interest statute is irreconcilably ambiguous as to the permitted methods of calculating and assessing interest, requiring us to invoke the rule of lenity to interpret the restitution interest statute in his favor.  Third, he contends that the calculation and assessment of monthly interest undermines the rehabilitative goals of the juvenile justice system. Fourth, he contends that any reading of the restitution interest statute that allows for the calculation and assessment of interest at

merits of this appeal, we remanded this case to the trial court so that it could re-enter its initial order on a date subsequent to our mandate in *A.N. I.*  It is this trial court order, issued on March 5, 2019, that we now consider.

3

a time other than at the end of each year renders the statute unconstitutionally vague.

## II. The Restitution Interest Statute

### A. Standard of Review

¶ 5    The manner in which restitution is imposed in Colorado is a matter of statutory law. §§ 18-1.3-601 to -603, C.R.S. 2018. Where, as here, an appeal requires us to interpret a statute, our review is de novo. *People v. Ortiz*, 2016 COA 58, ¶ 15.

### B. The Meaning of "Per Annum"

¶ 6    When restitution is ordered by the trial court, it is due and payable when the court enters the order. § 16-18.5-104(1), C.R.S. 2018. If a defendant cannot pay the entire amount of restitution at that time, the defendant will be referred to a collections investigator who will set a payment schedule. § 16-18.5-104(4)(a)(I). The defendant must pay interest on the unpaid balance. § 18-1.3-603(4)(b)(I), C.R.S. 2018. The restitution interest statute was originally enacted to provide "full restitution for victims of crime *in the most expeditious manner.*" *Roberts v. People*, 130 P.3d 1005, 1009 (Colo. 2006) (quoting § 18-1.3-601(1)(g)(I), C.R.S. 2005). When the trial court issued A.N.'s restitution order, the relevant

statute provided that "[a]ny order for restitution made pursuant to this section shall also be deemed to order that . . . [t]he defendant owes interest from the date of the entry of the order at the rate of twelve percent per annum . . . ." § 18-1.3-603(4)(b)(I), C.R.S. 2013.[2] The interpretation of this language is the central issue in this appeal.

¶ 7    When interpreting statutes, our responsibility is to ascertain the intent of the legislature as represented in the plain language of the statute. *Roberts*, 130 P.3d at 1007. If the language is clear, we apply the statute as written. *People v. Ray*, 2018 COA 158, ¶ 16. However, if the language is ambiguous, we may use other tools of interpretation to determine the intent of the legislature. *Id.*

¶ 8    Here, the statutory language states that defendants owe 12% per annum, which clearly means that defendants must pay an amount of interest equal to 12% annually. Black's Law Dictionary 1317 (10th ed. 2014) (defining per annum as "[b]y, for, or in each

---

[2] In 2016, the legislature amended this portion of the statute to read, "[t]he defendant owes *simple interest* from the date of the entry of the order at the rate of eight percent per annum . . . ." Ch. 277, sec. 1, § 18-1.3-603(4)(b)(I), 2016 Colo. Sess. Laws 1143 (emphasis added).

year; annually"). However, the interest provision does not address the frequency with which the Judicial Department *may calculate and assess interest.* Therefore, the restitution interest statute is ambiguous on this point. *Ray,* ¶ 24 (finding this language ambiguous as to the question of how often the Judicial Department can require a defendant to make interest payments).

¶ 9    In *Ray,* a division of this court addressed the proper interpretation of this very ambiguity. *Id.* at ¶ 27. The *Ray* division noted that (1) the consensus in other jurisdictions is that the term "per annum" does not indicate an intent to require annual interest payments; (2) the legislature has clearly mandated annual interest payments in other statutes but has not done so with respect to restitution; (3) the assessment of monthly interest is consistent with industry standards and would lead to the collection of no more than 12% interest per year; (4) the assessment of annual interest would contradict the legislature's intent to assess interest from the date of the order; (5) monthly interest assessments encourage expeditious payment, effectuating the intent of the legislature; (6) other statutory provisions that may encourage expeditious payment are no substitute for postjudgment interest; and (7) the Judicial

Department's manner of computing and assessing interest does not modify or contravene the restitution interest statute as written.  *Id.* at ¶¶ 28-39.

¶ 10    The argument that monthly interest assessments encourage expeditious payment, effectuating the intent of the legislature, is particularly compelling.  We do not construe statutes to yield absurd results and we avoid constructions that contradict the overall legislative scheme.  *People v. Benavidez*, 222 P.3d 391, 393 (Colo. App. 2009).  Under A.N.'s proposed method of interest calculation and assessment, a defendant has no reason to pay off his restitution debt until the day before annual interest is to be assessed.  If he then pays off the entirety of the debt, he will pay no interest although the debt has existed and remained unpaid for nearly a year.  This result ignores the legislative declaration associated with the restitution interest statute, which states that "[a]n effective criminal justice system requires timely restitution to victims of crime and to members of the immediate families of such victims in order to lessen the financial burdens inflicted upon them . . . ."  § 18-1.3-601(1)(e), C.R.S. 2018.  When crime victims are not paid in a timely manner for financial losses, and are

deprived of interest on those amounts, the legislative goal of lessening victims' financial burdens is substantially thwarted, as a victim has essentially given an interest-free loan to a defendant. *See People v. Garcia,* 55 P.3d 243, 245 (Colo. App. 2002) (noting that victims should be compensated for a defendant's delay in repaying restitution obligations).

¶ 11    In light of this compelling and substantial evidence of legislative intent, we are persuaded to follow the holding in *Ray*. We conclude that the trial court's interpretation of the restitution interest statute is correct and that the statute allows the Judicial Department to compute and assess interest at a rate of 1% per month.

## III.   The Rule of Lenity

¶ 12    We also reject A.N.'s contention that we should apply the rule of lenity to interpret the statute in his favor.  Because that rule applies only when other methods of statutory interpretation fail, and such methods were effective here, we need not apply the rule of lenity.  *People v. Summers,* 208 P.3d 251, 258 (Colo. 2009) (stating that the rule of lenity is a "rule of last resort" to be used only if,

after using other aids to statutory construction, legislative intent is still unclear).

## IV. Juvenile Rehabilitation

¶ 13    A.N. separately argues that calculating and assessing interest on a monthly basis is inconsistent with the goal of rehabilitation of juveniles embedded in the juvenile code because "high amounts of restitution may exacerbate poverty for indigent juveniles, their families, and siblings." We disagree.

¶ 14    The juvenile code provides that "the juvenile justice system shall take into consideration the best interests of the juvenile, the victim, and the community in providing appropriate treatment to reduce the rate of recidivism in the juvenile justice system and to assist the juvenile in becoming a productive member of society." § 19-2-102(1), C.R.S. 2018. Thus, the code indeed reflects a particular concern for the rehabilitation of juveniles. However, the code also reflects a concern that the juvenile justice system function as a means of restoring safety and security to victims of crime, keeping the victim's best interests in mind as well. *Id.*; § 19-2-102(2) (noting that the juvenile justice system should seek to repair harm caused by criminal conduct and hold juveniles

accountable for such conduct).  The goals of juvenile rehabilitation and community protection are not inconsistent.  In fact, the juvenile code states that its purpose is "to serve the welfare of children and the best interests of society," expressly recognizing that the legislature's intent is to balance both interests and that striking that balance is not inconsistent with the provisions of the juvenile code.  § 19-1-102, C.R.S. 2018; *see People v. Juvenile Court*, 893 P.2d 81, 91 (Colo. 1995) (noting that the juvenile code reflects a balance between concern for juveniles and concern for the community at large).

¶ 15    The legislature has, therefore, chosen to require juveniles to pay restitution where they have damaged property through their criminal conduct even if they cannot immediately pay the full amount.  § 19-2-918(1)-(2), C.R.S. 2018.  To that end, the juvenile restitution statute further provides that, like adults, juveniles must pay interest in accordance with section 18-1.3-603.  § 19-2-918(2).  Thus, the legislature has not enacted any separate provisions creating different repayment standards for juveniles in light of the rehabilitative purpose of the juvenile code.  Nor has the legislature made the inability to pay restitution, including restitution interest,

a factor to be considered in issuing a restitution order in a juvenile case. *People v. Stovall*, 75 P.3d 1165, 1167 (Colo. App. 2003) (noting that restitution must be ordered regardless of a defendant's ability to pay); *see People v. Cardenas*, 262 P.3d 913, 914-15 (Colo. App. 2011) (rejecting a defendant's contention that the restitution interest statute is an excessive fine and concluding that the defendant's inability to work is irrelevant).

¶ 16     We therefore cannot consider A.N.'s alleged inability to pay when determining the meaning of the restitution interest statute as to juveniles, nor can we invalidate the statute because it may sometimes function in a way that is contrary to the purposes of the juvenile code. *Juvenile Court*, 893 P.2d at 88 (noting that a provision of the criminal code could not be deemed invalid because it is contrary to the purposes of the juvenile code).

¶ 17     Moreover, the legislature has specifically recognized that the payment of restitution "is a mechanism for the rehabilitation of offenders" and "aid[s] the offender in reintegration as a productive member of society." § 18-1.3-601(1)(c), (2).  We will not contravene these express legislative declarations by concluding that monthly interest, assessed to a juvenile in accordance with the restitution

interest statute, thwarts the rehabilitative purposes of the juvenile code.

## V. Constitutional Constraints on Statutory Ambiguity

¶ 18 A.N. raises a final contention, not addressed in *Ray*, that the trial court's interpretation of the restitution interest statute renders the statute unconstitutionally vague, violating his due process rights under the United States and Colorado Constitutions. *See* U.S. Const. amends. V, XIV; Colo. Const. art. II, § 25. Specifically, A.N. argues that because the restitution interest statute is ambiguous as to the *frequency* with which interest may be assessed, there is a danger that it will be enforced in an arbitrary and capricious manner.

¶ 19 As a threshold issue, we note that we may conclude that a statute is ambiguous when the statute is "silent on an issue that would be expected to be within its scope." *Ray*, ¶ 16 (quoting *People v. Carey*, 198 P.3d 1223, 1229 (Colo. App. 2008)). This standard is not to be equated with the standard under which we evaluate whether a statute is void for vagueness due to constitutional constraints. Rather, when considering whether a statute is unconstitutionally vague, we examine whether the statute

gives fair warning of prohibited conduct and whether it lacks explicit standards for application, creating a danger of arbitrary and capricious enforcement. *See, e.g., Colo. Auto & Truck Wreckers Ass'n v. Dep't of Revenue*, 618 P.2d 646, 651 (Colo. 1980).

¶ 20    In addition, we are mindful that a statute is presumed to be constitutional, and a party challenging its constitutionality must prove, beyond a reasonable doubt, that it is unconstitutional. *Parrish v. Lamm*, 758 P.2d 1356, 1364 (Colo. 1988). Therefore, if a statute is capable of both constitutional and unconstitutional interpretations, we will adopt the constitutional interpretation. *Id.* We will construe the restitution interest statute "in such a way that it is not void for vagueness whenever a reasonable and practical construction can be given to its language . . . ." *People v. Phillips*, 652 P.2d 575, 578 (Colo. 1982).

¶ 21    A.N. has not met the heavy burden of proving that the restitution interest statute is unconstitutional beyond a reasonable doubt. "A provision is not void for vagueness if it fairly describes forbidden conduct so as to enable persons of common intelligence readily to understand its meaning and application." *Stamm v. City & Cty. of Denver*, 856 P.2d 54, 56 (Colo. App. 1993). Words or

13

phrases, therefore, may be given their generally accepted meanings and need not be defined with mathematical precision. *Id.*; *see Allstate Prods. Co., Inc. v. Colo. Dep't of Labor & Emp't*, 782 P.2d 880, 882 (Colo. App. 1989) ("[D]ue process of law requires neither scientific nor mathematical exactitude in legislative draftsmanship.").

¶ 22 Here, a person of common intelligence would understand the words "[12%] per annum" in section 18-1.3-603(4)(b)(I), C.R.S. 2013, to cap the total amount of interest collected at 12% per year, however frequently interest may be calculated and assessed. Within the scope of that limitation, when an interest rate is stated on a "per annum" basis, it is generally accepted that interest may be calculated monthly, as long as that calculation approximates the specified yearly interest rate. *Ray*, ¶ 30 (noting that the Judicial Department's monthly interest assessments are consistent with standard practices in the financial community).

¶ 23 Furthermore, the "per annum" rate should be interpreted in the context of the statute as a whole. *Mr. Lucky's, Inc. v. Dolan*, 197 Colo. 195, 198, 591 P.2d 1021, 1023 (1979) (stating that in evaluating vagueness, the court must analyze the standards set

14

forth in the statute according to its purpose and context). When the restitution interest statute is considered in the context of Colorado's restitution scheme as a whole, its standards of enforcement are sufficient to clarify which methods of calculation and assessment are acceptable. The restitution interest statute requires that the Judicial Department begin charging interest on the date that restitution is ordered. § 18-1.3-603(4)(b)(I). It also requires that the Judicial Department establish procedures to "collect full restitution for victims of crime in the most expeditious manner." § 18-1.3-601(1)(g)(I).

¶ 24 Therefore, A.N.'s assertion that the Judicial Department has so much discretion that it arbitrarily "could decide to assess interest quarterly, semiannually, or daily" is unpersuasive. Any decision with respect to the method of collecting restitution must, as far as is practicable, allow the Judicial Department to assess interest promptly after the requisite order is issued, must promote expeditious repayment, and must permit the collection of no more

than 12% total interest per year.[3] Although these constraints do not amount to a mathematical formula for the calculation and assessment of interest, they limit the range of options available. The allowable enforcement methods do not create a danger of arbitrary and capricious enforcement; thus, they satisfy minimal due process requirements. *Stamm*, 856 P.2d at 57 (concluding that the statute was not so "ill-defined as to create a danger of arbitrary or capricious enforcement" when its disputed terms were viewed according to their ordinary meaning, as well as their interpretation in prior case law and their policy context).

## VI.  Conclusion

¶ 25    We affirm the trial court's order.

---

[3] We decline A.N.'s request to "clarify" that interest under section 18-1.3-603(4)(b)(I), C.R.S. 2013, must be assessed as simple interest rather than compound interest. "We may not read into a statute a provision not found in it." *Rook v. Indus. Claim Appeals Office*, 111 P.3d 549, 552 (Colo. App. 2005). Nonetheless, we note that the statute was subsequently amended to clarify that simple interest applies, 2016 Colo. Sess. Laws at 1142. We also note that where contrary terms are not specified, simple interest generally applies. *People v. Ray*, 2018 COA 158, ¶ 32. In addition, the People argue that the Judicial Department intended to assess only simple interest. We therefore proceed, for purposes of discussion, as if the interest assessed is simple interest.

JUDGE NAVARRO and JUDGE WELLING concur.