## No. 18,174.

### HAZEL B. MICHAEL *v.* JOHN HANCOCK MUTUAL LIFE INSURANCE CO.

(334 P. [2d] 1090)

Decided February 2, 1959.

Mr. ISAAC MELLMAN, Mr. GERALD N. MELLMAN, for plaintiff in error.

Messrs. DAWSON, NAGEL, SHERMAN & HOWARD, Mr. ARTHUR K. UNDERWOOD, JR., Mr. RAYMOND J. TURNER, for defendant in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

PLAINTIFF in error was the plaintiff in the District Court. She filed an action against the defendant insurance company on two life policies of $1,000.00 each which had been issued on the life of her husband, the decedent, Frank A. Quinn. The answer admitted the issuance of the policies and the death of the insured, but denied liability on the ground that the assured had died by self destruction within two years of the date of the issuance of the policies. It relied upon a clause in the policies which provided "if the assured shall die within two years from the date of this policy by self destruction

while sane or insane, the amount payable hereunder shall be limited to the premiums paid hereon."

The death occurred at Ft. Richardson, Alaska, where the insured was stationed as a Lieutenant Colonel in the United States Army.

The policies were issued August 8, 1947, and the death occurred August 8, 1948. The policies were executed and completed at Boston, Massachusetts, and the district court found that each was a Massachusetts contract governed by the laws of that state.

The trial judge found and concluded that the decedent "died by his own hand, and that the manner of his death comes clearly within the terms of the policies which prohibit the payment of the principal sum of $1,000.00 for each policy if he should die by an act of self destruction." Judgment was entered for the defendant.

At the trial, the death having been admitted, the plaintiff introduced the insurance policies and rested her case.

The defendant's evidence consisted of the testimony of one James Killeen, who in August 1948 was an agent for the Army Criminal Investigation Division in Anchorage, Alaska. Killeen had been assigned to investigate the death of the insured. He described his investigation and finally gave his opinion as to the cause of death.

Killeen testified that just prior to his death the insured had been absent without leave. On August 11, 1948, his body was discovered beside an abandoned building on the Post. The deceased was lying on his left side and when the body was turned over a 45 caliber automatic was found under him. He was grasping it with both hands, the barrel was pointed away from his body and there was a wound mark in the front of the face just below the nose. This was a large opening and the skin around it had been seared. The exit hole appeared at the base of the head in the back of the head and was also a large one. A 45 cartridge casing was discovered in the near vicinity and a bullet ricochet marking was apparent on a board of the building just behind the place where

the body was found. This was at an angle which coincided with the course of the bullet through the face and skull of the insured. The weapon, a 45 caliber automatic pistol, was one which had been issued to the insured. Other investigation was made as to possible motive for suicide. The witness testified that from all of the physical facts, he had formed an opinion as to the cause of death; that this conclusion was that "he died of a self-inflicted gunshot wound."

Other evidence of the defendant included a voluminous report which was made by Colonel George E. Percefull, who had been commissioned as a Summary Court to conduct a Court of Inquiry by the Commanding General. This consisted of an autopsy report, a death certificate issued by the Territory of Alaska, affidavits of various witnesses who attested to occurrences before the death, photographs of the body and the report, conclusions and findings of the Investigating Officer. This was admitted in evidence pursuant to Title 28, Sec. 1733, U.S.C.A. Also introduced were Army Regulations pertaining to reports required in cases of death (on military installations). The photographs had been taken by the witness Killeen and were identified by him.

The trial judge found and concluded that the evidence of the witness Killeen (apart from Exhibit 1, the Report of the Board of Inquiry) was sufficient to rebut and overcome the presumption that the decedent had died a natural death.

The issues which are here presented by the plaintiff question the propriety of the order compelling the plaintiff to produce a copy of the investigation report conducted by the Army Air Force for the purpose of determining cause of death and also whether the court was in error in receiving this report (which is marked Exhibit 1) in evidence. Other questions for determination involve sufficiency of the evidence and question whether the law of Colorado (relative to incontestability) is applicable.

454

■ 1. *Propriety of the order of production.* The order of production was pursuant to Rule 34 of the Colorado Rules of Civil Procedure.. The argument is that the document in question was not in the actual possession or control of the plaintiff and for this reason the court could not order the plaintiff to take steps to make it available to the defendant. The limitations set forth in Rule 34 are (1) "relevancy" under Rule 26 (b), and (2) "possession, custody, or control." We conclude that the trial judge did not abuse his discretion by ordering plaintiff to produce this document because, even though it was not in her actual possession, it was under her control. We hold that this rule required production of the documents which are obtainable by the order or direction of the litigant. This is in accord with the viewpoint which has been adopted by a majority of the courts. 4 Moore's Federal Practice, Second Edition, 34.17, p. 2470; *United Mercantile Agencies v. Silver Fleet Motor Express, Inc.,* 1 F.R.D. 709 (W.D. Ky. 1941); *Reeves v. Penn. Ry. Co.,* 80 F. Supp. 107 (Del. 1948); *Nola Electric, Inc. v. Reilly,* 11 F.R.D. 103 (S.D. N.Y. 1950); *Johnson v. Wilson Lines, Inc.,* 13 F.R.D. 453 (D.C. E.D. Penn. 1952); *Karlsson v. Wolfson,* 18 F.R.D. 474 (Minn. 1956). In the latter case the Court said:

" * * * the Bureau of Internal Revenue shall regard original tax returns as confidential and shall disclose them only upon application of the taxpayer or his attorney in fact. Thus a taxpayer has the right in his own interest, to introduce his tax returns in evidence if they are relevant and material. Therefore no good reason appears for permitting him to suppress them when contrary to his interest."

In 4 Moore's Federal Practice 34.17, p. 2470, the author sums up the problem as follows:

" * * * Actual possession of the documents or things is not necessary, if the party has control of them; thus, a party may be required to obtain copies of tax returns filed by him, since he has a potential right to the custody

or control of such copies, but he cannot be compelled to produce X-ray photographs taken and retained by his physician in the absence of a showing that the party has a legal right to demand the photographs."

2. *Admissibility of the report.* We have reached the conclusion that the evidence herein is not only substantial but overwhelming in support of the conclusion of the Court that death occurred by suicide. Moreover, we are of the opinion that the evidence was sufficient even though parts of Exhibit 1, the report, were, in our viewpoint, hearsay and incompetent. This the trial court found was merely cumulative and therefore (the trial having been to the court) our viewpoint with respect to the competency of the report does not affect the decision.

Defendant argues that this report was admissible upon the basis of common law evidence principles or by reason of Title 28, Sec. 1733, U.S.C.A., a qualifying statute. The trial court, however, ruled that it was admissible only by virtue of the qualifying statute. We do not believe that this report was admissible in its entirety under common law principles, or under the statute.

Included in Exhibit 1 is the report of the officer who presided at the inquiry. He has incorporated his findings and conclusions and these are for all practical purposes an adjudication. If *he* had been present at the trial and had been subject to cross-examination, his conclusions would have been valid to the same extent that those of the coroner are valid. But his findings and conclusions are no more competent than the coroner's verdict. *Germania Life Insurance Company v. Ross Lewin,* 24 Colo. 43, 51 P. 488. A death certificate is admissible under our statute, C.R.S. '53, 66-8-24. Its notations are prima facie evidence of the cause of death. *Occidental Insurance Co. v. U. S. National Bank,* 98 Colo. 126, 132, 53 P. (2d) 1180. So the Alaska death certificate would also be admissible if it were authenticated in accordance with Federal statute. The autopsy report (which was also part of Exhibit 1) was admissible as a contempo-

raneous report of factual occurrences. These statements were made by one who had no motive to misrepresent and who was required by law to report such facts in the course of his duty. *People v. Misonoff,* 293 N.Y. 597, 59 N.E. 2d 420; Melville, Manual of Criminal Evidence (2d Ed.), 115.

■ The numerous affidavits which were appended to the report and which were received and considered testimonially were incompetent and inadmissible. The attached photographs were admissible as part of the report and also by reason of their having been identified by Killeen.

■ Does Title 28, U.S.C.A., Section 1733, render admissible the hearsay affidavits and report containing findings and conclusions? We hold that it does not. This section provides:

"(a) Books or records of account or minutes of proceedings of any department or agency of the United States shall be admissible to prove the act, transaction or occurrence as a memorandum of which the same were made or kept.

"(b) Properly authenticated copies or transcripts of any books, records, papers or documents of any department or agency of the United States shall be admitted in evidence equally with the originals thereof. June 25, 1948, c. 646, 62 Stat. 946."

This section directs admission of books, records and minutes. It is not specific in requiring the admission of findings, adjudications and conclusions and thus it is nothing more than a codification of the common law exception to the hearsay rule in favor of official records. It does not, therefore, authorize the reception in evidence of every report of an investigation regardless of its hearsay character and of whether it contains conclusions and adjudications. We conclude that the report and findings, together with the affidavits, were not admissible and that their hearsay character was not improved by giving them the status of "official records."

3. *Sufficiency of the Evidence.* Even though the trial court should have discriminated as between the various parts of Exhibit 1, no good purpose would be served by reversing the judgment. We are in agreement with the trial judge that there was ample evidence in the record, apart from the report, to support his findings. Not only was there adequate evidence to overcome the presumption against suicide, but it established beyond any reasonable doubt that the death of Colonel Quinn was suicidal. All of the physical facts pointed to that conclusion, and in addition, the trial court had before it the observations of the witness Killeen supported by photographs of the scene. The plaintiff points to certain inconsistencies in the testimony of Killeen, and calls attention to letters written by Quinn just before his death from which it is to be inferred that he was not then contemplating suicide. These conflicts were subject to evaluation by the trial court, and they are not sufficiently substantial to excite suspicion, much less resolve the question into one of law. Where the trial is to the court and there is sufficient competent evidence in the record, the judgment will not be reversed because of the presence in the record of non-prejudicial hearsay evidence, *Davis v. Bonebrake,* 135 Colo. 506, 313 P. (2d) 982, the presumption being that the trial judge disregarded all incompetent and immaterial evidence.

4. *Inapplicability of "Suicide no Defense" statute.* It is finally argued that C.R.S. '53, 72-3-23, applies to the case. That section provides that: "The suicide of a policyholder after the first policy year of any life insurance policy issued by any life insurance company doing business in this state, shall not be a defense * * *." The death in the instant case occurred exactly one year after the effective date of the policy, and plaintiff urges that the above statute operates to bar the defense of suicide.

The trial court based its conclusion that this statute did not apply, on the fact that the contracts became effective in Massachusetts, and no such provision is in

effect in that Commonwealth. The evidence disclosed that the policies were initiated by applications filed in Pennsylvania. These were forwarded to Boston, Massachusetts, the home office. Neither the plaintiff nor the insured were residents of Colorado and at the time of the trial plaintiff resided in California. In the pre-trial order appeared the following:

"It is agreed that the validity of the insurance policies are based on the place of making."

Under the circumstances disclosed, it is unnecessary to determine whether the mentioned statute applies to insurance contracts of non-residents filing actions thereon in Colorado. *Mutual Benefit Health and Accident Association v. Baldridge,* 70 F. 2d 236 (Cir. 10).

Finding no reversible error, we conclude that the judgment should be affirmed, and it is so ordered.