The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
JULY 9, 2020

## 2020COA106

**No. 19CA0485,** *Bernache v. Brown* **— Vehicles and Traffic — Records to Be Kept by Department — Admission of Records in Court; Evidence — Hearsay**

In this proceeding, a division of the court of appeals considers whether section 42-2-121(2)(c)(II), C.R.S. 2019, allows automatic admission of a hearsay statement within a traffic accident report. The division concludes that the district court misinterpreted the statute when it admitted a witness's hearsay statement contained in the report where the statement did not independently satisfy a hearsay exception. Because the division reverses the judgment and remands the case for new trial where a new jury will decide the matter, it does not consider the claim that a juror committed misconduct.

Court of Appeals No. 19CA0485
El Paso County District Court No. 17CV31772
Honorable Chad Clayton Miller, Judge

Celena Esther Jean Bernache,

Plaintiff-Appellant,

v.

Gary Brown,

Defendant-Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division A
Opinion by JUDGE FOX
Bernard, CJ., and Berger, J., concur

Announced July 9, 2020

McDivitt Law Firm, P.C., David E. McDivitt, Edward Lomena, Colorado Springs, Colorado, for Plaintiff-Appellant

Park & Metz LLP, Randy S. Metz, Carbondale, Colorado, for Defendant-Appellee

¶ 1    In this car accident litigation, plaintiff Celena Esther Jean Bernache appeals a jury verdict in favor of defendant Gary Brown, arguing that the district court erroneously admitted a hearsay statement within a traffic accident report (the report). She also argues that a juror's failure to disclose her relationship with a fact witness was misconduct. We conclude that the district court erroneously admitted the hearsay statement within the report, and the error was not harmless. So we reverse and remand the case for a new trial. Because Bernache's juror misconduct claim will not arise in the new trial, we do not consider it.

## I.    Background

¶ 2    On November 5, 2015, Bernache was driving south on Highway 85 toward Fountain, Colorado, with her daughter and grandson. Brown, also driving south on Highway 85 and to the left of Bernache's vehicle, hit the median and struck Bernache's rear passenger door and wheel well. The parties dispute why Brown hit the median. Brown, who has no independent recollection of the collision, insists he suffered a sudden medical emergency while Bernache alleges he fell asleep.

1

¶ 3    Fountain Police Department Corporal Galen Steele did not witness the accident but later responded to the accident and spoke with an unidentified witness who said that, just before he struck the median, Brown had "'[s]tiffen[ed] up' and lean[ed] towards the right like he was having a heart attack." The witness left the scene before Steele could collect identifying information, but he included the witness's statement in his report.

¶ 4    Bernache filed this lawsuit on July 20, 2017, and later filed a motion in limine to exclude the unidentified witness's statement within the accident report from the trial. Broadly interpreting section 42-2-121(2)(c)(II), C.R.S. 2019 — which states, among other things, that official state records are statutory exceptions to Colorado's hearsay rule, CRE 802 — the district court ruled that the report was admissible in its entirety. Relying on the pretrial ruling, Bernache stipulated during trial to the admission of the report and did not renew her objection.

¶ 5    During jury selection, prospective juror F.L. disclosed knowing Steele through her husband. However, she said that her husband's relationship with Steele would not "color [her] thinking" about his testimony. F.L. was a juror during the trial.

¶ 6     After a two-day trial, the jury found in Brown's favor.  During a later discussion about the trial, F.L. allegedly told Bernache's counsel that she gave Steele's testimony considerable weight because she knew how he thought and worked.  Bernache now appeals.

## II.     Unidentified Witness Statement

¶ 7     Bernache first argues that the district court erred by admitting the unidentified witness's statement.  Specifically, Bernache argues that (1) the witness statement is hearsay and does not satisfy a hearsay exception; and (2) the district court misinterpreted section 42-2-121(2)(c)(II) by ruling that the witness statement was admissible.  We agree and remand the case for a new trial.

### A.     Preservation, Waiver, and Invited Error

¶ 8     Brown argues that Bernache failed to preserve her hearsay argument because she did not contemporaneously object to the court's admission of the entire report at trial.  Brown also argues that Bernache waived her right to appeal this issue because she stipulated to the report's admission during trial, thereby inviting any error by referencing the witness statement in her opening argument.

¶ 9     A court's definitive ruling on a motion in limine preserves the issue for appeal.  CRE 103(a); *see also Uptain v. Huntington Lab, Inc.*, 723 P.2d 1322, 1330-31 (Colo. 1986) (pretrial ruling on a motion in limine sufficiently preserves an issue for appeal); *People v. Mattas*, 645 P.2d 254, 260 (Colo. 1982) ("Preservation of a defendant's right to challenge a trial court's evidentiary rulings requires a [pretrial] motion to suppress the evidence or an objection at trial to its introduction.").  A party abiding by the court's order need not renew an objection at trial to preserve the issue for appeal.  *Bennett v. Greeley Gas Co.*, 969 P.2d 754, 758 (Colo. App. 1998).[1]

¶ 10    Waiver is "the intentional relinquishment of a known right or privilege." *People v. Rediger*, 2018 CO 32, ¶ 39 (quoting *Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984)).  To hold a

---

[1] But when a party violates the court's pretrial order, common sense militates in favor of requiring a contemporaneous objection. *See People v. Dinapoli*, 2015 COA 9, ¶ 22.  In this situation, an objection does not merely revive an argument that the court has already rejected. *Id.*  Instead, an objection serves to alert the trial court to the violation of the pretrial order and to the objecting party's argument against the other party's action. *Id.*  Indeed, not requiring a contemporaneous objection would create an undesirable incentive: the party who received a favorable pretrial ruling could sit silently while the ruling was violated at trial and then, if the party received an adverse verdict, move for a new trial based on the error. *Id.*

party waived objection to an error, a court must find some record evidence that the defendant intentionally relinquished a known right, *Rediger*, ¶ 39, indulging "every reasonable presumption against waiver" and examining the totality of the circumstances surrounding a party's conduct (or lack thereof), *People in Interest of A.V.*, 2018 COA 138M, ¶ 13 (quoting *Rediger*, ¶ 39).

¶ 11     The doctrine of invited error prevents a party from complaining on appeal of an error that he or she has invited or injected into the case. *Rediger*, ¶ 34. The doctrine applies in "situations where an error was caused by a party's affirmative, strategic conduct and not by a party's inaction or inadvertence." *People v. Garcia*, 2018 COA 180, ¶ 7.

¶ 12     Here, the district court definitively ruled that the report — including the hearsay from the unidentified witness — was admissible, and the court did not indicate it was willing to reconsider its ruling at trial. Because Bernache did not need to renew her objection to the witness statement to preserve it, she had nothing to gain by resisting the court's admission of the statement at trial. The witness statement was a key component of Brown's defense, and prudent trial strategy — knowing the court had

approved the statement's admission — favored Bernache addressing the statement preventatively. Thus, under the totality of the circumstances, Bernache did not intentionally relinquish her right to appeal the court's admission of the witness statement by stipulating to it at trial. Nor did she invite error by addressing the witness statement during opening argument. To hold otherwise would "undermine the benefits provided by the motion in limine procedure." *Uptain*, 723 P.2d at 1330.

¶ 13 Accordingly, we conclude that the court's ruling on Bernache's pretrial motion in limine preserved her hearsay objection, and that Bernache did not waive her right to appeal or invite error during the trial. *See id.* at 1330-31; *see also Rediger*, ¶ 3.

### B. The Record Supports the Trial Court's Finding that the Witness Statement Did Not Qualify as a Hearsay Exception under the Colorado Rules of Evidence

#### 1. Applicable Law and Standard of Review

¶ 14 Hearsay is any "statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). CRE 802 prohibits the admission of hearsay unless the statement meets a rule-based or statutory exception. When a statement — such as

6

the report at issue here — contains multiple layers of hearsay, the trial court must analyze each layer separately to determine whether a recognized exception applies. CRE 805; *People v. Phillips*, 2012 COA 176, ¶ 101.

¶ 15 As is relevant to our analysis, a hearsay statement is admissible as a present sense impression under CRE 803(1), an excited utterance under CRE 803(2), or a public record or report as defined under CRE 803(8). A present sense impression is a statement describing an event made while the declarant was perceiving the event. CRE 803(1). An excited utterance is a statement that "relat[es] to a startling event or condition [and is] made while the declarant was under the stress of excitement caused by the event or condition." CRE 803(2).

¶ 16 CRE 803(8)(B) authorizes the admission of certain public records and reports, even though they are hearsay, unless the source of information or other circumstances indicate a lack of trustworthiness. This court has recognized that police reports are admissible under CRE 803(8). *See, e.g.*, *Kelln v. Colo. Dep't of Revenue*, 719 P.2d 358, 360 (Colo. App. 1986). But statements are

not admissible under Rule 803(8) solely because they are contained in a police report.

¶ 17    While the report itself may be admissible, statements made to the officer who prepared the report are inadmissible unless they independently meet a hearsay exception.  CRE 805; *Orth v. Bauer*, 163 Colo. 136, 138-40, 429 P.2d 279, 281 (1967) (hearsay statements and conclusions of police officers in a police report are not entitled to preferred status and, thus, trial court acted properly in excluding such evidence); *Michael v. John Hancock Mut. Life Ins. Co.*, 138 Colo. 450, 456, 334 P.2d 1090, 1094 (1959) (holding that a report and its "findings, together with the affidavits, were not admissible and that their hearsay character was not improved by giving them the status of 'official records'"); *Leiting v. Mutha*, 58 P.3d 1049, 1053 (Colo. App. 2002) (excluding hearsay statements contained in the report of an administrative law judge (citing *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907-08 (2d Cir. 1991))); *Quintana v. City of Westminster*, 56 P.3d 1193, 1198 (Colo. App. 2002) (affirming exclusion of eyewitness statements attached to police reports).

¶ 18    Steele did not witness the accident.  Aside from repeating the unidentified witness's statement, the record discloses nothing about the circumstances under which the witness saw the accident or relayed the statement to Steele.

¶ 19    We review evidentiary rulings for an abuse of discretion. *Murray v. Just In Case Bus. Lighthouse, LLC*, 2016 CO 47M, ¶ 16.  A trial court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair, or the court bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.  *Front Range Res., LLC v. Colo. Ground Water Comm'n*, 2018 CO 25, ¶ 15.

### 2.    Analysis

¶ 20    The witness told Steele that he saw Brown "'[s]tiffen up' and lean towards the right like he was having a heart attack."  Brown offered this statement at trial as evidence that he suffered a sudden medical emergency at the time of the accident.  Hence, the witness statement is clearly an out-of-court statement offered for its truth.  *See* CRE 801(c).

¶ 21    Next, because the witness statement is hearsay within hearsay, we must consider if it qualifies as a hearsay exception

9

independent of the fact that it appears in a police report. *See* CRE 805; *Orth*, 163 Colo. at 138-40, 429 P.2d at 281; *Michael*, 138 Colo. at 456, 334 P.2d at 1094; *Leiting*, 58 P.3d at 1053. While the report contains no identifying information about the witness, one can infer that the witness spoke with Steele after the accident occurred. Without more foundation, we cannot conclude that the statement automatically qualifies as a present sense impression under CRE 803(1). Further, while it is possible the witness was startled by what he had observed, this witness was not directly involved in the accident. Considering that the witness made the statement after the accident and that Steele recorded no other observations about the witness's demeanor, there is simply not enough evidence in the record for us to conclude that the witness statement is an excited utterance under CRE 803(2).[2] The district court's in limine ruling recognized as much.

¶ 22 Accordingly, the record supports the trial court's conclusion, in its in limine ruling, that the witness statement did not qualify for

---

[2] While the district court ultimately admitted the witness statement under section 42-2-121(2)(c)(II), C.R.S. 2019, it first concluded that the statement did not qualify as a present sense impression or an excited utterance. This finding is not disputed on appeal.

a hearsay exception under the Colorado Rules of Evidence. *See* CRE 803(1)-(2); *Leiting*, 58 P.3d at 1053. And, as we explain below, the admissibility of police reports does not immunize other hearsay within such reports.

C. Section 42-2-121(2)(c)(II) Does Not Allow Admission of Hearsay Statements within Official Reports unless They Independently Qualify as Hearsay Exceptions

¶ 23 Given that the witness statement did not satisfy a hearsay exception under the Colorado Rules of Evidence, we now consider if the district court properly relied on section 42-2-121(2)(c)(II) to admit the statement. Brown argues that the plain language of section 42-2-121(2)(c)(II) allows the court to admit the full contents of official reports, including hearsay statements. We disagree.

1. Standard of Review and Applicable Law

¶ 24 We review de novo questions of statutory interpretation. *Hall v. Am. Standard Ins. Co. of Wis.*, 2012 COA 201, ¶ 19. "[W]hen the statutory language is clear and unambiguous, we need not look beyond its plain terms and must apply the statute as written." *Id.* (citing *Kyle W. Larson Enters., Inc. v. Allstate Ins. Co.*, 2012 COA 160M, ¶ 10). If statutory language is ambiguous or if the statute is silent on an issue that would be expected to be within its scope, we

enlist tools of statutory interpretation to discern the legislature's intent. *In re Marriage of Alvis*, 2019 COA 97, ¶ 9 (citing *People v. Ray*, 2018 COA 158, ¶ 16). "Those tools include legislative history, prior law, the consequences of a particular construction, and the goal of the statutory scheme." *Id.* (citing *In re Marriage of Ikeler*, 161 P.3d 663, 668 (Colo. 2007)). A statute is ambiguous if multiple reasonable interpretations are possible. *Andrews v. Miller*, 2019 COA 185, ¶ 21 (citing *Carrera v. People*, 2019 CO 83, ¶ 18).

¶ 25    "We must interpret the statute 'to give consistent, harmonious, and sensible effect to all its parts.'" *Alvis*, ¶ 9 (quoting *Ikeler*, 161 P.3d at 667). "A statutory interpretation leading to an illogical or absurd result will not be followed," *Frazier v. People*, 90 P.3d 807, 811 (Colo. 2004), and courts "avoid constructions that are at odds with the legislative scheme," *Bryant v. Cmty. Choice Credit Union*, 160 P.3d 266, 274 (Colo. App. 2007).

¶ 26    We review evidentiary rulings in civil cases for harmless error. C.R.C.P. 61; *Laura A. Newman, LLC v. Roberts*, 2016 CO 9, ¶ 24. We will not disturb a judgment unless a court's error affected the substantial rights of the parties. C.R.C.P. 61. An error affects the substantial rights of the parties if it "substantially influenced the

12

outcome of the case or impaired the basic fairness of the trial itself."

*Laura A. Newman, LLC*, ¶ 24 (quoting *Bly v. Story*, 241 P.3d 529,

535 (Colo. 2010)) (emphasis omitted).

## 2.  Analysis

¶ 27    Section 42-2-121(2)(c)(II) provides, in relevant part, as follows:

> In any trial or hearing, all official records and
> documents of the state of Colorado . . . shall be
> admissible in all municipal, county, and
> district courts within the state of Colorado
> without further foundation, shall be statutory
> exceptions to rule 802 of the Colorado rules of
> evidence, and shall constitute prima facie
> proof of the information contained therein.[3]

The statute has declared, since 1990, that official state reports are

"statutory exceptions to rule 802."

¶ 28    The parties disagree  whether this exception applies to hearsay

within official state reports.  Brown argues that the plain language

of section 42-2-121(2)(c)(II) is clear on its face and allows blanket

admission of official reports.

¶ 29    Section 42-2-121 clearly allows a court to admit official state

reports, even if the report *itself* is hearsay and does not qualify as a

---

[3] There is no dispute that the statute applies to police reports.  The record shows that the police report was to be filed with the Division of Motor Vehicles in the Department of Revenue.

hearsay exception. But the statute does not explicitly address whether hearsay statements *within* official state reports are automatically admissible. Given its silence on that issue, the statute's declaration that official state reports are statutory exemptions to CRE 802 is susceptible of multiple reasonable interpretations. *See Andrews*, ¶ 21. Thus, we must use tools of statutory construction to determine if the legislature intended section 41-2-121(2)(c)(II) to allow admission of hearsay within official reports. *See Alvis*, ¶ 9.

¶ 30    Bernache argues we should interpret section 42-2-121(2)(c)(II) as courts have interpreted CRE 803(8) and Fed. R. Evid. 803(8), the analogous federal rule. Colorado cases — before and after the 1990 enactment of the statutory provision at issue — have repeatedly recognized that hearsay in a police report is inadmissible. *See Orth*, 163 Colo. at 138-40, 429 P.2d at 281; *Michael*, 138 Colo. at 456, 334 P.2d at 1094; *Leiting*, 58 P.3d at 1053; *Quintana*, 56 P.3d at 1198; *see also Schnabel v. Waters*, 37 Colo. App. 498, 501-04, 549 P.2d 795, 799-800 (1976) (affirming trial court's exclusion of information in a police report); *Polster v. Griff's of Am., Inc.*, 34 Colo. App. 161, 165-66, 525 P.2d 1179, 1182 (1974) (police report

14

properly excluded); *Watson v. Watson*, 507 P.2d 1122, 1126 (Colo. App. 1973) (not published pursuant to C.A.R. 35(f)) (factual information in investigative report of state agency not admitted unless based on personal knowledge). *But see Lannon v. Taco Bell, Inc.*, 708 P.2d 1370, 1374 (Colo. App. 1985) (police reports could qualify as business records and admitting the same in a civil case, but without explaining why the hearsay therein was reliable).

¶ 31  Focusing on the post-enactment cases, in *Leiting*, a division of this court held hearsay statements within public records are not automatically admissible under CRE 803(8).[4]  58 P.3d at 1053.  And in *Quintana*, 56 P.3d at 1198, a division of this court concluded that the trial court properly excluded eyewitness statements that were attached to police reports because those statements were hearsay.

¶ 32  Brown's proposed interpretation of section 42-2-121(2)(c)(II) would create an exception for official state records and reports from the general rule that hearsay statements within public records are

---

[4] Similarly, in *Parsons v. Honeywell, Inc.*, cited in *Leiting v. Mutha*, 58 P.3d 1049, 1053 (Colo. App. 2002), the Second Circuit held that, while traffic reports are generally admissible under Fed. R. Evid. 803(8), hearsay statements within them are inadmissible unless they satisfy a hearsay exception.  929 F.2d 901, 907 (2d Cir. 1991).

inadmissible unless they independently qualify for a hearsay exception. *See* CRE 805; *Leiting*, 58 P.3d at 1053. To determine if the legislature intended section 42-2-121(2)(c)(II) to create such an exception for official state records, we look to the legislative history underlying section 42-2-121(2)(c)(II).

a.    Legislative History of Section 42-2-121(2)(c)(II)

¶ 33    Section 42-2-121 is similar to section 42-2-118 as it existed before 1994. *See* Ch. 18, sec. 1, § 42-2-118(2)(c)(II), 1993 Colo. Sess. Laws 40. The General Assembly first addressed the admission of official state records in court in 1977, *see* Ch. 551, sec. 1, § 42-2-118(2), 1977 Colo. Sess. Laws 1867, but did not add language addressing CRE 802 until 1990, *see* Ch. 298 sec. 6, § 42-2-118(2)(c)(I), 1990 Colo. Sess. Laws 1780. In making that amendment, the General Assembly did not address hearsay within official state records; however, it emphasized that the primary purpose of section 42-2-118(2)(c)(II) was to ensure that state personnel no longer had to appear before courts could admit official state records into evidence. *See* Hearings on H.B. 90-1272 before the H. Judiciary Comm., 57th Gen. Assemb., 2d Sess. (Feb. 13, 1990); Hearings on H.B. 90-1272 before the S. Judiciary Comm.,

16

57th Gen. Assemb., 2d Sess. (Mar. 20, 1990); Hearings on H.B. 90-1272 before the S. Judiciary Comm., 57th Gen. Assemb., 2d Sess. (Mar. 21, 1990). The General Assembly also emphasized that parties could still challenge the contents of official reports. *See, e.g.*, Hearings on H.B. 90-1272 before the S. Judiciary Comm., 57th Gen. Assemb., 2d Sess. (Mar. 20, 1990).

¶ 34 Thus, it is apparent that the legislature never intended to exempt official state records from any challenge under the rules of evidence; rather, the legislature sought to exempt official state records from rules of evidence that would require state officials to appear in court.

¶ 35 With this background in mind, we conclude that section 42-2-121(2)(c)(II) does not allow admission of hearsay statements within official state reports unless those statements independently satisfy a hearsay exception. The purpose of section 42-2-121(2)(c)(II) is to prevent state officials from having to appear in court, but even if an official appears and testifies to the facts contained in a report — as was the case here — that official cannot testify to the truth of statements made by others regarding matters the official did not personally observe. *Westinghouse Elec. Corp. v. Dolly Madison*

17

*Leasing & Furniture Corp.*, 326 N.E.2d 651, 657 (Ohio 1975). The testimony of a state official in court authenticating an official state record alone does not render a third-party hearsay statement admissible. Thus, we do not believe the legislature, in reducing the burden on public record custodians and other state officials, intended to allow admission of otherwise inadmissible hearsay statements merely because they appear in an official state record. *See Orth,* 163 Colo. at 141, 429 P.2d at 282 ("[I]t is obvious that the mere writing down of hearsay does not remove the bar to its admission").[5]

---

[5] *Orth v. Bauer,* 163 Colo. 136, 141, 429 P.2d 279, 282 (1967), and *Westinghouse Electric Corp. v. Dolly Madison Leasing & Furniture Corp.,* 326 N.E.2d 651, 657 (Ohio 1975), predate the adoption of the Federal (and Colorado) Rules of Evidence. However, the Federal Rules of Evidence, which the Colorado rules largely track, are "organic growths out of our common law, . . . and must be construed with that pedigree in mind." *United States v. Fryberg,* 854 F.3d 1126, 1132 (9th Cir. 2017) (citations omitted). Thus, we rely on these cases for their articulation of the principles that underlie statutory public records exceptions to rules against hearsay. Interestingly, the comments to Fed. R. Evid. 803(6) include the following explanation concerning the limited admissibility of police reports:

> Sources of information presented no substantial problem with ordinary business records. *All participants, including the observer or participant furnishing the information to be recorded, were*

18

¶ 36    Our interpretation of section 42-2-121(2)(c)(II) is consistent with the rationale behind the general rule against admitting hearsay: opponents cannot cross-examine the out-of-court speaker. *See Nicholls v. People*, 2017 CO 71, ¶ 15 ("[H]earsay statements are presumptively unreliable since the declarant is not present to explain the statement in context. . . . Moreover, since the declarant is not subjected to cross-examination, the truthfulness of the statement is questionable." (quoting *Blecha v. People*, 962 P.2d 931, 937 (Colo. 1998))); *see also People v. Dist. Court*, 719 P.2d 722, 727 (Colo. 1986) (recognizing that parties to "civil litigation also have a

----

*acting routinely, under a duty of accuracy, with employer reliance on the result, or in short "in the regular course of business."* If, however, the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail. *An illustration is the police report incorporating information obtained from a bystander: the officer qualifies as acting in the regular course but the informant does not. The leading case,* Johnson v. Lutz*, 253 N.Y. 124, 170 N.E. 517 (1930), held that a report thus prepared was inadmissible. Most of the authorities have agreed with the decision.*

Fed. R. Evid. 803 advisory committee's note to paragraph 6 (emphasis added).

limited constitutional right to thoroughly cross-examine adverse witnesses").

¶ 37    The purpose of public and official record exceptions is "to admit the sundry sorts of public documents for which no serious controversy ordinarily arises about their truth." *United States v. Fryberg*, 854 F.3d 1126, 1132 (9th Cir. 2017) (quoting *United States v. Orellana-Blanco*, 294 F.3d 1143, 1150 (9th Cir. 2002)). But, unlike official records generally, hearsay statements within official records are not necessarily trustworthy, and opponents should have the opportunity to test the accuracy of those statements through cross-examination. *See Westinghouse*, 326 N.E.2d at 657 ("[Hearsay statements are] not made competent by commitment to writing in an official report, since it remains evidence not subject to cross-examination and not based on first-hand knowledge.").

¶ 38    Accordingly, we conclude that section 42-2-121(2)(c)(II) does not exempt official state records from the rules regarding hearsay within hearsay and that the district court erred by admitting the

unidentified witness statement.[6]  *See* CRE 805; *Orth,* 163 Colo. at 141, 429 P.2d at 282; *Leiting,* 58 P.3d at 1053.

      b.    The District Court's Error Was Not Harmless

¶ 39    Having concluded that section 42-2-121(2)(c)(II) does not allow admission of hearsay within official state reports unless the statements independently qualify as hearsay exceptions, we now consider whether the district court's error was harmless.  We conclude it was not.

¶ 40    Brown's entire defense was that he suffered a sudden medical emergency during the accident, and the witness statement was the strongest evidence of his claimed medical emergency.  While a neurologist testified as an expert about Brown's possible medical emergency, the neurologist could not say what medical condition or event caused Brown to lose control of his vehicle.  Moreover, Brown himself claimed he had no recollection of why or how the accident

---

[6] The inclusion of the unidentified witness statement does not render the entire report inadmissible; the district court could have required the parties to redact the witness statement and admitted the portions of the report that memorialized Steele's personal observations.  *See, e.g., Leiting,* 58 P.3d at 1052 ("[P]ortions of a record or report that set forth factual findings resulting from an investigation made pursuant to authority granted by law are admissible under CRE 803(8)(C).").

21

occurred. Thus, the jury must have relied heavily — if not entirely — on Steele's testimony and the unidentified witness statement in reaching its verdict. Indeed, a substantial number of the jurors' questions centered on Brown's condition. For example, one juror asked Steele, "[i]f the witness didn't mention the medical emergency, would you have [reached] the same conclusion? Why? Did Mr. Brown mention a medical problem?" The question was posed with the parties' agreement. Steele responded that he concluded Brown suffered a medical emergency because of the witness's statement and that he did not recall Brown mentioning a medical problem. Another juror inquired: "If the witness said it looked like a heart attack, which you thought was the cause of the accident, why would you not follow up to check for a heart attack?"[7] Steele responded that the medical team is responsible for evaluating an individual's medical condition and that the police cannot force individuals involved in an accident to go to the hospital. These

---

[7] The jurors posed additional questions on this subject, some of which the parties agreed should not be posed to Steele. Even the questions that were not posed to Steele show that the witness's statement about Brown was central to the jurors' thought processes.

22

questions highlight the centrality of the hearsay statement to the case.

¶ 41 Because the jury might have reached a different verdict had the court excluded the unidentified witness statement from the trial, the error here was not harmless. *See Leiting*, 58 P.3d at 1053 ("[E]rror is not harmless if a different result might have been reached had the inadmissible evidence been excluded"); C.R.C.P. 61; *Laura A. Newman, LLC*, ¶ 24. Accordingly, we remand the case for a new trial.

¶ 42 Given our disposition, we need not address Bernache's juror misconduct claim.

### III. Conclusion

¶ 43 The judgment is reversed, and the case is remanded for a new trial.

CHIEF JUDGE BERNARD and JUDGE BERGER concur.