25CA1244 Peo in Interest of SMG 02-26-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1244
Garfield County District Court No. 24JV11
Honorable Elise Myer, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of S.M.G., a Child,

and Concerning L.A.G.,

Appellant.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE LIPINSKY
Tow and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 26, 2026

---

Heather Beattie, County Attorney, Bart Outzen, Assistant County Attorney, Glenwood Springs, Colorado, for Appellee

Josie L. Burt, Counsel for Youth, Glenwood Springs, Colorado, for S.M.G.

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Constit. Art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    L.A.G. (mother) appeals the judgment adjudicating her child, S.M.G. (the youth), dependent or neglected and the dispositional order adopting mother's treatment plan. We reverse the judgment and the order, and we remand the case to the juvenile court for further proceedings.

## I.    Background

¶ 2    In June 2024, the Garfield County Department of Human Services filed a petition in dependency or neglect concerning the then-eleven-year-old youth. The Department alleged that mother had taken the youth to a hospital emergency room where mother asked for help with the youth's "escalating unsafe behaviors." In the petition, the Department reported that mother had said she could not handle being the youth's "nursemaid" for "seventeen hours per day" and needed "respite care." The Department noted concerns about mother's mental health and, specifically, her history of "mental health hospitalizations and diagnoses." (The Department filed an amended petition (the amended petition) the next month. The differences between the original and amended petitions are not material to this appeal.)

¶ 3    The juvenile court granted the Department temporary legal custody of the youth, who was placed in foster care.  Mother subsequently denied the allegations in the amended petition and requested an adjudicatory jury trial.

¶ 4    After a two-day trial, the jury rendered a verdict finding that the youth's environment was injurious to the youth's welfare.  Based on the jury's verdict, the court adjudicated the youth dependent and neglected.  The court subsequently conducted a contested dispositional hearing and issued an order adopting a treatment plan for mother.

## II.    Admission of Exhibits

¶ 5    Mother first contends that the juvenile court erred by admitting three exhibits (the subject exhibits): (1) a police report; (2) the amended petition; and (3) the Department's intake report.  She argues that the subject exhibits were inadmissible because they "exposed the jury to highly prejudicial hearsay statements that were not admissible under the Rules of Evidence" and it was "highly likely" they influenced the jury into "believing that the [youth's] environment was injurious to the [youth's] welfare."  Mother also asserts that, by admitting the hearsay statements in the subject

exhibits, the court violated her due process right to fundamentally fair proceedings.

¶ 6    The Department and GAL concede that mother preserved her hearsay arguments. And we agree that the court abused its discretion by admitting the subject exhibits into evidence and conclude that reversal is required because their admission was not harmless. In light of this conclusion, we need not address the Department and GAL's argument that mother failed to preserve her prejudice and due process arguments.

A.    Applicable Law and Standard of Review

¶ 7    The purpose of an adjudicatory jury trial is to determine whether the factual allegations in the dependency and neglect petition are supported by a preponderance of the evidence and whether the status of the subject child warrants intrusive protective or corrective state intervention into the familial relationship. *People in Interest of G.E.S.*, 2016 COA 183, ¶ 13, 409 P.3d 645, 649. A child may be adjudicated dependent or neglected if the government proves one or more of the conditions set forth in section 19-3-102, C.R.S. 2025, by a preponderance of the evidence. *See People in Interest of S.M-L.*, 2016 COA 173, ¶ 29, 459 P.3d 572, 577

3

("[S]ection 19-3-102 requires proof of only one condition for an adjudication."), *aff'd but criticized sub nom. People v. G.S.*, 2018 CO 31, 416 P.3d 905.

¶ 8    A juvenile court may not disregard the rules of evidence at an adjudicatory hearing. *People in Interest of D.M.F.D.*, 2021 COA 95, ¶ 10, 497 P.3d 14, 16. Thus, a department of human services must introduce sufficient admissible evidence to meet its burden of proof that a child is dependent or neglected; it cannot rest its case on inadmissible hearsay. *Id.* at ¶ 11, 497 P.3d at 16. Nor can a factfinder base its determination that a child is dependent or neglected on inadmissible hearsay evidence. *Id.*

¶ 9    Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). Hearsay is inadmissible except as provided by statute or rule. CRE 802. As relevant here, the exceptions to the hearsay rule include "records of regularly conducted activity," otherwise referred to as business records, under CRE 803(6), and "public records and reports" under CRE 803(8).

¶ 10    But even if a document is admissible under CRE 803(6) or

CRE 803(8), any hearsay statements contained within that

document are not necessarily admissible.  CRE 805; *see also*

*Bernache v. Brown*, 2020 COA 106, ¶ 16, 471 P.3d 1234, 1239

(explaining that, although a police report may be admissible under

CRE 803(8), statements made to an officer documented in the

report are inadmissible unless they independently meet a hearsay

exception).  Rather, when a statement contains multiple layers of

hearsay, a court must analyze each layer separately to determine

whether a recognized exception to the hearsay rule applies.

CRE 805; *Bernache*, ¶ 14, 471 P.3d at 1238.

¶ 11    We review a juvenile court's evidentiary rulings for an abuse of

discretion.  *M.A.W. v. People in Interest of A.L.W.*, 2020 CO 11, ¶ 32,

456 P.3d 1284, 1289.  A court abuses its discretion if it misapplies

the law or if its decision is manifestly arbitrary, unreasonable, or

unfair.  *Id.*

B.    Police Report

¶ 12    Mother challenges the juvenile court's admission of a police

report describing, among other things, an incident in which law

enforcement personnel responded to an anonymous report that

mother was yelling at the youth. At trial, mother argued that the police report was inadmissible because it contained hearsay "statements . . . from an unknown party." The juvenile court acknowledged that the police report "contain[ed] hearsay" but overruled mother's objection, finding that the authoring officer's testimony established a sufficient foundation for admission of the report as a business record under CRE 803(6). On appeal, mother reiterates her hearsay arguments regarding the police report.

¶ 13    We initially note that police reports generally "do not fall within 'the business records exception' to the hearsay rule." *See Polster v. Griff's of Am., Inc.*, 525 P.2d 1179, 1182 (Colo. App. 1974). However, police reports may be admissible as public records under CRE 803(8). *See Bernache*, ¶ 16, 471 P.3d at 1239. Even so, witness statements contained in a police report are inadmissible unless they independently satisfy a hearsay exception. *Id.* at ¶ 17, 471 P.3d at 1239.

¶ 14    The police report said, referring to mother and the youth, that "an anonymous caller stat[ed] a mother was yelling at her daughter." Because the caller did not testify, and the record does not indicate that the Department offered this statement into

6

evidence for anything other than the truth of the matter asserted, the caller's statement was hearsay within hearsay. *See* CRE 801(c); CRE 805.

¶ 15 Although the juvenile court acknowledged that the police report contained this hearsay, it did not analyze whether the anonymous caller's statement independently met a hearsay exception. On this record, we cannot conclude that the statement was admissible under a hearsay exception. *See Bernache*, ¶ 21, 471 P.3d at 1239.

¶ 16 Accordingly, we conclude that the caller's statement documented in the police report was inadmissible hearsay, and that the juvenile court abused its discretion by admitting the police report without redacting the statement. *See id.* at ¶¶ 22, 38 n.6, 471 P.3d at 1239-40, 1243 n.6.

### C. Amended Petition

¶ 17 Next, mother challenges the juvenile court's admission of the amended petition into evidence. At trial, mother argued that the amended petition was inadmissible because it contained hearsay and misleading allegations. The court overruled mother's objection,

finding that the amended petition was admissible as a public record under CRE 803(8).

¶ 18     It is not clear to us whether the amended petition was admissible as a public record under CRE 803(8).  Unless the sources of information or other circumstances indicate a lack of trustworthiness, the public records hearsay exception allows the admission of records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency; (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel; or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law.  CRE 803(8).  It is difficult to see how a narrative of the Department's unsubstantiated allegations against mother falls within one of the subcategories of CRE 803(8). *Cf. Tincombe v. Colo. Const. & Supply Corp.*, 681 P.2d 533, 534 (Colo. App. 1984) (holding that complaints made to the Attorney General's Office were not admissible as public records because they

were comprised of unsubstantiated allegations, not factual findings). Moreover, "matters concerning the pleadings are ordinarily addressed to the judge, whose duty it is to state the issues to the jury when [the court] comes to deliver to them [the] instructions." *Cook v. Merritt*, 25 P. 176, 177 (Colo. 1890); *see also People in Interest of M.H-K.*, 2018 COA 178, ¶¶ 49, 57, 433 P.3d 627, 635-36 (concluding that the juvenile court erred when it read to the jury detailed allegations from the petition, some of which relied on inadmissible evidence, and providing the jury with a written copy of the allegations from the petition "ma[de] matters worse").

¶ 19     On appeal, mother argues only that the hearsay statements contained in the amended petition were inadmissible. She points to the inclusion in the amended petition of a "running narrative" of the events leading up to the Department's involvement in the family, "told from the perspective of various persons . . . most of whom did not . . . testify during the trial." She also asserts that statements in the amended petition attributed to the youth's pediatrician were inadmissible hearsay within hearsay. Indeed, the amended petition includes a three-page narrative of the events leading up to the filing

of the original petition.  Although mother does not point to any specific hearsay statements in the amended petition, we agree that it includes hearsay statements from the youth's pediatrician.  For example, the Department alleged the following in the amended petition:

> Dr. Dan Galka, [the youth's] pediatrician, reported these behaviors have gotten worse over the last few weeks.  Dr. Galka stated [mother] has difficulties handling [the youth] when her impulsive behaviors are escalated, and he does not believe she has the parenting skills to cope with the behaviors.  He reported [mother] is very adamant about who [the youth] can see for psychiatric services and has declined participation in many referrals.  Dr. Galka stated [the youth] is at the maximum dosage of all [the youth's] medications.

¶ 20     Notably, the pediatrician did not testify at the hearing, and the Department did not assert that it was offering the amended petition for any purpose other than to prove the truth of the matters asserted therein.  Thus, the pediatrician's statements were hearsay within hearsay.  *See* CRE 801(c); CRE 805.  Moreover, the juvenile court did not analyze whether the pediatrician's statements independently met a hearsay exception.  Again, on this record, we cannot conclude that the statements were admissible under one of

the exceptions to the hearsay rule.  *See Bernache*, ¶ 21, 471 P.3d at 1239.

¶ 21     Accordingly, we conclude that the pediatrician's statements contained in the amended petition were inadmissible hearsay and, for that reason, the juvenile court abused its discretion by admitting the amended petition without redacting the statements. *See id.* at ¶¶ 22, 38 n.6, 471 P.3d at 1239-40, 1243 n.6.

## D.     Intake Report

¶ 22     Lastly, mother challenges the juvenile court's admission of the intake caseworker's court report.  At the adjudicatory trial, mother argued that the intake report was inadmissible because it contained "a lot" of hearsay.  The court overruled mother's objection, finding that the ongoing caseworker's testimony sufficiently established that the intake report was admissible as a business record under CRE 803(6).  (To the extent the Department argues that the intake report was admissible under section 19-1-107, C.R.S. 2025, we are not convinced.  Although the statute allows a juvenile court to consider "written reports and other material relating to the child's mental, physical, and social history," such consideration is limited to instances involving the court's determination of the "proper

disposition of a child." § 19-1-107(2). But the court does not determine a child's disposition at an adjudicatory jury trial. *Compare* § 19-1-103(4), C.R.S. 2025 (stating that, at an adjudicatory trial, the factfinder determines whether the allegations of a petition in delinquency are supported by the evidence), *with* § 19-1-103(58) (providing that, at a dispositional hearing, the court determines what order of disposition should be made concerning a child who is neglected or dependent), *and* § 19-3-507(1)(a), C.R.S. 2025 (stating that the court shall hear evidence on the question of the proper disposition best serving the interests of the child *after* making an order of adjudication).)

¶ 23     On appeal, mother reiterates her hearsay argument regarding the intake report. She notes that it contains the same narrative of events, including the pediatrician's statements, that appears in the amended petition. As explained above, the pediatrician's statements were inadmissible without a more robust foundation.

¶ 24     Mother also argues that the intake report contains hearsay statements relating to every referral the Department received about the family since 2012. Indeed, the report contains nine pages of referral summaries, most of which consist of unidentified third

parties' statements to the Department, such as the following reports from such third parties:

- Mother was "pregnant and went to the hospital for pain. [She] had received no prenatal care and self-reported she has a high risk pregnancy . . . ."

- The youth is "underweight and [mother] has not taken [the youth] to follow-up appointments since birth." "[T]here is concern that [mother] may leave the state with [the youth]. [Mother] reported the Department is investigating her for terrorist activity."

- Mother "seemed paranoid, was fixated on the Department trying to sell [the youth], and she seemed overwhelmed trying to manage [the youth's] needs . . . ."

- Mother's "significant other . . . had dunked [the youth] under water and was charged with child abuse."

- Mother "slammed [the youth] onto the floor, grabbed [the youth's] wrists and ankle, and twisted them."

- Mother "emotionally abuses [the youth] and there is substance abuse in the home." The youth and mother

were "arguing and [the youth] reported that [mother] had dragged [the youth] across the floor."

- The youth is "being malnourished and there were concerns for [mother's] lack of capacity to care for [the youth]."

- Mother has "a history of substance use, and there is concern for her escalating mental health issues."

- Mother "brought [the youth] to the emergency room saying [the youth] needed to 'go somewhere else' due to [the youth] being loud and screaming because [mother] was afraid of losing her [public] housing." The youth was "kicked off the swim team," the youth was "defecating on the floor at home," mother said she was "not sure if she [could] continue to care for [the youth's] medical and mental health needs," and the youth "disclosed there [was] not enough food in the home."

¶ 25    Like the unknown caller referenced in the police report, none of the unidentified reporters noted in the intake report testified at trial, and the record does not indicate that the Department offered these statements for any purpose other than proving the truth of

14

the matter asserted. Thus, the statements were hearsay within hearsay. *See* CRE 801(c); CRE 805. As noted above, the juvenile court did not analyze whether any of the unidentified reporters' statements independently met a hearsay exception. Without a more robust foundation, these statements were not admissible under one of the hearsay exceptions. *See Bernache*, ¶ 21, 471 P.3d at 1239.

¶ 26 Accordingly, we conclude that the juvenile court abused its discretion by admitting the intake report without redacting the statements. *See id.* at ¶¶ 22, 38 n.6, 471 P.3d at 1239-40, 1243 n.6.

### E. Harmless Error Analysis

¶ 27 The erroneous admission of evidence does not automatically require reversal of a judgment. *See* CRE 103(a); C.R.C.P. 61. But we conclude that the juvenile court's erroneous admission of the subject exhibits was not harmless because it impaired the basic fairness of the trial in a way that likely influenced the outcome of the case. *See* CRE 103(a); C.R.C.P. 61; *People in Interest of M.V.*, 2018 COA 163, ¶ 67, 432 P.3d 628, 639, *overruled on other grounds by People in Interest of E.A.M. v. D.R.M.*, 2022 CO 42, 516 P.3d 924.

¶ 28    We acknowledge that at least some of the inadmissible hearsay duplicated testimony at trial.  For example, several witnesses testified to the same information that appeared in the unknown caller's statement documented in the police report — that they saw or heard mother yell at the youth.  Further, the ongoing caseworker testified, without objection, about certain of the inadmissible statements in the amended petition, including the statement that the youth's pediatrician did not believe mother had the parenting skills to cope with the youth's behaviors.  In addition, the GAL cross-examined mother, without objection, about a number of the reports to the Department included in the intake report.  We note that the inadmissible statements — primarily those in the amended petition and the intake report — were substantially more detailed than the analogous testimony at the trial.  Thus, the erroneous admission of the hearsay statements was harmful because it was not merely cumulative of trial testimony.  *Cf. M.V.*, ¶¶ 66-67, 432 P.3d at 639 (explaining that the erroneous admission of evidence is generally considered harmless if the admitted evidence is merely cumulative of other evidence introduced at trial).

¶ 29    Further, one jury instruction stated that "evidence of the alleged instances of abuse and parental neglect relied upon to establish the child's dependency and neglect must be considered in the context of the child's history as well as the parent's prior behavior."  Based on that instruction, the jury could have considered the inadmissible statements in the intake report because they specifically related to the youth's history and mother's prior behavior.

¶ 30    Moreover, the juvenile court did not give the jury any limiting instructions about the inadmissible hearsay statements in the subject exhibits.  Rather, the court instructed the jury to consider "only the evidence received at trial," which included "all exhibits which ha[d] been received in evidence."  Thus, the jury may have considered the inadmissible statements for the truth of the matters asserted.

¶ 31    The juvenile court's errors were not harmless because we cannot say with fair assurance that they did not "substantially influence[] the outcome of the case or impair[] the basic fairness of the trial itself."  *Bly v. Story*, 241 P.3d 529, 535 (Colo. 2010) (quoting *Banek v. Thomas*, 733 P.2d 1171, 1178 (Colo. 1986)).

17

¶ 32     Accordingly, we reverse the adjudicatory judgment and remand the case to the juvenile court for a new trial.

### III.   Treatment Plan

¶ 33     Mother also contends that the juvenile court erred by adopting her treatment plan because the plan required her to complete a mental health evaluation.  Thus, she asserts that we must reverse the dispositional order.

¶ 34     Given our conclusion that the adjudicatory judgment must be reversed, we need not address this contention.  *See People in Interest of R.J.*, 2019 COA 109, ¶ 16 n.1, 451 P.3d 1232, 1236 n.1 (explaining that a dispositional order is predicated on the adjudicatory judgment; thus, if we reverse the adjudicatory judgment, the dispositional order must fall, as well).  Although we have the discretion to address an issue that may arise on remand, *See Westfield Dev. Co. v. Rifle Inv. Assocs.*, 786 P.2d 1112, 1118 (Colo. 1990), we cannot determine if the issue regarding the treatment plan will arise on remand because (1) we cannot predict the outcome of the retrial, and (2) even if the retrial results in the youth's adjudication, the family's circumstances may materially change by the time of the new trial.  *See People in Interest of S.L.,*

2017 COA 160, ¶ 10, 421 P.3d 1207, 1212 (explaining that the appropriateness of a treatment plan depends, in part, on the facts existing at the time it is adopted).  Consequently, we decline to address mother's contention regarding her treatment plan.

## IV.  Disposition

¶ 35    The adjudicatory judgment and dispositional order are reversed.  The case is remanded for the juvenile court to hold a new adjudicatory trial.

JUDGE TOW and JUDGE TAUBMAN concur.